# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LINDA J. BOULDIN,

      Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[1]

      Defendant.

No. 12 C 06779

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda J. Bouldin filed this action seeking reversal of the final decision of the Commissioner of Social Security (Commissioner) denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 1381 *et seq*. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and the parties have filed cross motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover SSI, a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 976-77 (N.D. Ill.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security and is substituted as the proper defendant in this action. 20 C.F.R. § 422.210(d) ("Where any civil action [against the Social Security Administration] is instituted, the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant.").

2001).[2] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[2] The regulations governing the determination of disability for Disability Insurance Benefits (DIB) are found at 20 C.F.R. § 404.1501 *et seq.* The standard for determining DIB is virtually identical to that used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for SSI on November 30, 2009, alleging that she became disabled on January 2, 2008, due to chest pain, right arm nerve damage, right lower extremity discomfort, asthma, high blood pressure, and rheumatoid arthritis. (R. at 28, 119, 384). The application was denied initially on May 13, 2010 (R. at 115), and upon reconsideration on August 31, 2010. (R. at 120). Plaintiff filed a timely request for a hearing and on April 1, 2011, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (R. at 28). The ALJ also heard testimony from Richard T. Fisher, a vocational expert (VE). (R. at 28).

The ALJ denied Plaintiff's request for benefits on July 19, 2011. (R. at 28-39). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since November 30, 2009, the application date. (R. at 30). At step two, the ALJ found that Plaintiff's asthma, hypertension, diabetes mellitus, inflammatory arthritis, neuropathy of the right upper extremity, and vision loss were severe impairments. (R. at 30). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (R. at 30-31).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and determined that she retained a light level residual functional capacity (R. at 32) and could perform light work as defined in 20 C.F.R. § 416.967(b),

> involving occasional pushing and pulling with the right side; frequent operation of foot controls with the right side; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional balancing stooping, and crouching; no kneeling or crawling; frequent reaching and overhead reaching with the right side; occasional gross manipulation with the right side; frequent fine manipulation with the right side; not even moderate exposure to environmental irritants such as fumes, odors, dusts, and gases; not even moderate exposure to environmental irritants such as fumes, odors, dusts, and gases; not even moderate exposure to poorly ventilated areas and chemicals; no concentrated exposure to dangerous machinery and unprotected heights; less than occasional night vision; and occasional far acuity.

(R. at 32).

At step four, the ALJ determined that Plaintiff has no past relevant work. (R. at 38). At step five, based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cashier and mail clerk. (R. at 38-39). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (R. at 39).

The Appeals Council denied Plaintiff's request for review on June 29, 2012. (R. at 1-6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing 42 U.S.C. § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is

weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. MEDICAL EVIDENCE

On November 15, 2009, Plaintiff was admitted to John H. Stroger Hospital for shortness of breath, and was diagnosed with acute asthma exacerbation. (R. at 221, 318). On November 16, 2009, Plaintiff had a breathing test, EKG heart test, and X-ray chest test performed. (R. at 223). Plaintiff was admitted to the hospital for three days of progressively worsening shortness of breath, wheezing, and chest tightness/pain. (R. at 35, 349). She experienced substernal chest pain during the attack. (R. at 321). The notes indicate she had no similar prior episodes.

In January 2010, Plaintiff filled out a Disability Report. (R. at 218-225). Plaintiff stated that she was limited by her impairments relating to chest pain, right arm nerve damage, right lower extremity discomfort, acute asthma, high blood pressure, and rheumatoid arthritis. (R. at 219).

On February 24, 2010, Plaintiff was admitted to Resurrection Hospital after she was found unresponsive by her family. (R. at 367). Her blood sugars were low. Swelling was noted on her right forearm. (R. at 370). Notes from that visit record shortness of breath from asthma and upper extremity nerve damage. (R. at 371). Treatment notes from Stroger Hospital indicated the following: February 28, 2010–asthma exacerbation with chest pain (R. at 411); June 22, 2010–numbness and shooting pain in both feet over the prior month (R. at 426); September 21, 2010–pain and numbness in her right upper and both lower extremities (R. at 441); October 8, 2010–vision worsening (R. at 449); and November 8, 2010–right knee pain, likely degenerative joint disease (R. at 451).

On January 16, 2011, Plaintiff was admitted, through the emergency room, and kept for observation for three days at Stroger Hospital. The records indicate she suffered from wheezing and shortness of breath and had a productive cough. (R. at 475).

**Medical Examiner and State Agency Consultants**

On April 6, 2010, Plaintiff had a consultative examination with Scott Kale, M.D., who opined that Plaintiff's activities of daily living were only minimally restricted. (R. at 382-91). A pulmonary function test showed moderately severe restriction, which was consistent with her complaints of coughing and shortness of breath on exertion. (R. at 383). Dr. Kale diagnosed significantly active pulmonary obstructive disease, right hand ulnar neuropathy and median neuropathy, poorly controlled hy-

pertension, and moderately well-controlled insulin dependent diabetes. (R. at 390). The ALJ gave this opinion great weight. (R. at 37).

On April 27, 2010, a non-examining state agency doctor (medical consultant), Richard Bilinsky, M.D., conducted a physical RFC assessment. (R. at 396-403). Dr. Bilinsky opined that the claimant retained the residual functional capacity to perform light work with postural limitations of occasionally climbing ladders, ropes and scaffolds. Dr. Bilinsky opined that Plaintiff was capable of lifting 20 pounds occasionally and 10 pounds frequently; standing and/or walking for about 6 hours in an 8-hour day, sitting for about 6 hours in an 8-hour day; limited to occasionally balancing, frequently handling and fingering with the right upper extremity; and limited to jobs with no more than occasional far acuity, and that she must avoid concentrated exposure to fumes, dusts, odors, gases, and poor ventilation. (R. at 38, 397-400). On August 26, 2010, non-examining medical consultant Calixto Aquino, M.D., affirmed Dr. Bilinsky's assessment. (R. at 38, 427-429). The ALJ found that these assessments were consistent with the objective medical record, but found that the claimant had greater restrictions based on her subjective allegations and the evidence received at the hearing. (R. at 37). The ALJ gave these opinions great weight. (R. at 37).

### Treating Physician, Dr. Chandra Chataut

On March 18, 2011, Dr. Chataut completed a form indicating that she had treated Plaintiff since 2008. (R. at 562-564). Dr. Chataut diagnosed diabetes, hypertension, arthritis, asthma, high cholesterol, and acid reflux. Dr. Chataut opined that

work activities such as lifting, bending, stooping, and reaching would be expected to aggravate her pain. Dr. Chataut also offered the following opinions about her patient: her concentration and attention were often impacted by pain and fatigue; she did not retain the capacity to function in a competitive work environment on a full-time basis; her impairments would be expected to cause her to miss work more than three times per month; and she had a marked limitation of activities of daily living due to repeated manifestation of inflammatory arthritis with fatigue and malaise. (R. at 562-564). The ALJ gave little weight to the assessment of Dr. Chataut. (R. at 37-38).

### Plaintiff's Testimony

At the hearing on April 1, 2011, Plaintiff testified that she was 53 years of age, had an 11th grade education, tried unsuccessfully to get her GED, and left the workforce in 1993 to take care of her father, whom she cared for until 2006. (R. at 61-63). She did not return to work because of her asthma. She testified that she does not do housework, and has not done so since January 2011. (R. at 64-65). Her sister does the shopping. Plaintiff does not socialize, and only leaves the house twice a month to go to a doctor's appointment. She can sit for about 45 minutes to an hour at one time, and she can stand for about 15 minutes at a time with a cane she started using in 2008, which she states was prescribed by Dr. Robert Saqueton. She uses the cane every day for walking. (R. at 69).

Plaintiff testified that the most she could lift was 10 pounds "on a good day." She has trouble walking up stairs, and she uses four sprays to treat her asthma. She

last went to the emergency room for an asthma attack in January 2011, and was hospitalized for three days. (R. 70-72). She stated that the asthma is triggered by things such as cold, heat, humidity, cologne, and food. Plaintiff testified that her hands swell, and when her hands swell she cannot prepare food. (R. at 72-75). Plaintiff also testified that she has difficulty seeing, even with eye glasses; she has pain in her right arm, from her shoulder to her hand; she takes Gabpentin and Toradol for pain, but they make her sleepy and dizzy; she has swelling in her right knee and foot which make it difficult for her to walk; she naps three times a day for 20 minutes to an hour at a time; and the pain in her right shoulder affects her ability to reach. (R. at 78-91).

## V. DISCUSSION

Plaintiff raises a number of arguments in support of her request for a reversal and remand. Her principal arguments can be summarized as: (1) the ALJ did not properly evaluate the opinion of Plaintiff's treating source; (2) the ALJ did not properly evaluate her credibility; and (3) the ALJ did not properly evaluate her residual functional capacity.

## A. The ALJ's evaluation of Dr. Chataut's opinion is not based on substantial evidence.

Plaintiff contends that the ALJ improperly rejected the opinions of her treating physician, Dr. Chataut. (Dkt. 23, Plt's Br. at 13). The ALJ gave little weight to Dr. Chataut's March 18, 2011 opinion that Plaintiff could not function in a competitive environment, even in a sedentary occupation. (R. at 37, 562-564). The ALJ gave three reasons for rejecting Dr. Chataut's opinion: (1) the doctor's conclusions are

contradicted by the opinions of examining and State agency physicians, whose opinions the ALJ gave greater weight to; (2) the assessment is inconsistent with the objective medical record and her own treatment records; and (3) the assessment lacks a function-by-function analysis as required by SSR 96-8p. (R. at 37).

By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010), and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel*, 345 F.3d at 470.

Under the circumstances, the ALJ's decision to give Dr. Chataut's opinion little weight is legally insufficient and not supported by substantial evidence. First, the ALJ concludes that Dr. Chataut's opinions are "contradicted by the opinions of examining and State agency physicians." With respect to the non-examining sources, Dr. Blinksy and Dr. Aquino, the fact that these sources came to a different conclusion than Dr. Chataut is not, alone, a sufficient reason to reject the treating source's opinion. *Gudgel*, 345 F.3d at 470 ("An administrative law judge can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."). There is no indication in the ALJ's decision why these opinions were afforded greater weight than Dr. Chataut's except that these opinions "support [the ALJ's] decision." (R. at 37).

With respect to Dr. Kale, the consultative examining physician, the ALJ affords his opinion great weight stating only that she finds it to be "informed, consistent with the medical evidence of record, and consistent with the record as a whole." (R. at 37). Because the ALJ does not say any more about why she finds Dr. Kale's opinion consistent with the medical records, and considering the several visits Plaintiff had with her treating physician after April 2010 and her hospitalization in January 2011 (R. at 421-426, 430-441, 447-561), it is not possible to discern why the ALJ credits Dr. Kale's opinion.

More importantly, the ALJ gives little weight to Dr. Chataut's March 2011 opinion, which occurred almost a year later, because it was "inconsistent with the objec-

tive medical record and her own treatment records." (R. at 37). The ALJ failed to cite to any evidence in the record to support her conclusion that the treating physician's assessment was inconsistent with the records. The Commissioner concedes this point, but argues that the ALJ's rejection of Dr. Chataut's assessment is supported by treatment notes in the record, and cites to several parts of the record in support of her argument.[4] The Commissioner then asserts that, although the ALJ failed to cite to any evidence in the record to support her conclusions, the Commissioner's argument does not violate the *Chenery*[5] doctrine because she is "not providing new rationale that the ALJ did not provide." (Dkt. 31, Resp. at 10). Rather, the Commissioner is supplementing evidence that may have been relied on by the ALJ – although the ALJ failed to articulate such. A similar reasoning has already been rejected by the Seventh Circuit:

> The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion.

*Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

---

[4] The Commissioner points to a March 4, 2010, report indicating: "Right thigh pain: muscular, no obvious etiology, tylenol#3, monitor" (R. at 417); a May 27, 2010, report indicating: "Right thigh pain: muscular, improved" (R. at 422); and a September 2, 2010, report indicating: "Right thigh pain: muscular, improved." (R. at 436). The Commissioner also argues that even though Plaintiff testified that her medications made her tired, Dr. Chataut's 2011 assessment makes no mention of any side effects. (Dkt. 31, Resp. at 10).

[5] *SEC v. Chenery Corp.*, 318 U.S. 80 (1943) forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

The ALJ failed to build a "logical bridge" between the facts of the case and the outcome. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). It is true that an ALJ is not required to address every piece of evidence in her decision, *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011), but an ALJ must identify *some* piece of evidence in her decision. While the Commissioner's brief attempts to highlight inconsistencies in the record, it is unclear whether these cites actually indicate inconsistencies. Moreover, the Commissioner is arguing inconsistencies that were never mentioned by the ALJ and the Court has no way of knowing if any of these exam notes were even considered by the ALJ in her analysis. *See Spiva*, 628 F.3d at 353 ("The government implies that if the administrative law judge's opinion consisted of two words—'benefits denied'—a persuasive brief could substitute for the missing opinion. That is incorrect.").

In sum, the ALJ provides no "good reasons" for discounting the treating physician's opinion, other than an unsupported conclusory statement that it is inconsistent with the non-treating physicians' opinions and the ALJ's conclusions in the case. Thus, the Court is left without the ability "to trace the path of [the ALJ's] reasoning." *See Scott*, 297 F.3d at 595 (internal citation omitted).

Further, Plaintiff contends that even if Dr. Chataut's opinion was not entitled to controlling weight, it was entitled to more than the limited weight afforded to it by the ALJ. If not well-supported by medically acceptable clinical and diagnostic techniques or inconsistent with other substantial evidence in the case record, a treating source medical opinion is nevertheless entitled to deference. Social Security Ruling

(SSR) 96–2p.[6] Ordinarily, it will be afforded "great weight." *See* SSR 96–2p. *See generally* 20 C.F.R. § 416.927(c) (detailing factors considered in evaluating weight given to a medical opinion). The following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5); *see also* SSR 96–5p ("In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors" in 20 CFR 416.927(c)). *See Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014) ("Even when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted simply to discard it. Rather, the ALJ is required by regulation to consider certain factors in order to decide how much weight to give the opinion.").

In determining the amount of weight to give to Dr. Chataut's opinion, the ALJ failed to articulate her consideration of almost all of the factors. She does not observe anywhere in her decision that Dr. Chataut treated Plaintiff since 2008 (R. at 562), nor does she state the Dr. Chataut is an internist (R. at 564). The ALJ's deci-

---

[6] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (internal citations omitted); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

sion concludes that Dr. Chataut's opinion is inconsistent with the record as a whole, but it does not consider the factors required by 20 C.F.R. § 416.927(c).[7]

On remand, the ALJ shall reevaluate the weight to be afforded Dr. Chataut's opinion. If the ALJ has any questions about whether to give controlling weight to Dr. Chataut's opinion, she is encouraged to recontact her, order a consultative examination, or seek the assistance of a medical expert. *See* SSR 96-5p; 20 C.F.R. §§ 416.917, 416.927(e)(2)(iii); *see also Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) ("If the ALJ thought he needed to know the basis of medical opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.") (citation omitted). In determining what weight to give Dr. Chataut's opinion the ALJ shall explicitly "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

## B. Substantial evidence does not support the ALJ's credibility determination.

Plaintiff contends that the ALJ erred in discounting Plaintiff's testimony about the nature and extent of her pain. (Dkt. 23, Plt.'s Br. at 10-13). Plaintiff argues that the ALJ's credibility determination improperly relies on (1) meaningless boilerplate

---

[7] The ALJ also incorrectly states that the treating physician's opinion must provide a function-by-function assessment pursuant to SSR 96-8p. (R. at 37). SSR 96-8p establishes no such requirement as it pertains to treating physicians. The Commissioner concedes this point, but argues that the ALJ's statement is harmless error. (Dkt. 31, Resp. at 11). Because the Court finds that the ALJ's decision is insufficient on other grounds, the Court need not decide whether this error can ever be considered harmless.

language, (2) daily activities to support a basis for work, (3) the fact that she left the workforce for non-medical reasons, and (4) "sparse medical treatment." Plaintiff also argues the ALJ fails to account for Plaintiff's medication side effects.

An ALJ's credibility determination may be overturned only if it is "patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 416.929(c); SSR 96-7p. An ALJ may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("[T]he administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support a claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and oth-

er relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted); *see* 20 C.F.R. § 416.929(c); SSR 96-7p.

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss*, 555 F.3d at 561. The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted); *see* SSR 96-7p. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942.

First, Plaintiff contends that the ALJ used meaningless boilerplate language to discredit her statements, which resulted in result-oriented decision making. (Dkt. 23, Plt.'s Br. at 11). In her decision, the ALJ stated in part:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. at 33-34).

This is the same language that the Seventh Circuit has repeatedly described as "meaningless boilerplate" because it "yields no clue to what weight the [ALJ] gave the testimony" and fails to link the conclusory statements made with the objective evidence in the record. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). "However, the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to in-

formation that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013).

In her decision, the ALJ found that:

> [T]he claimant's allegations are not entirely credible, as they are inconsistent with her work history, course of treatment, and her activities of daily living. The record indicates that the claimant left her last job in 1993 for non-medical reasons. In addition, the record demonstrates that the claimant retains the ability to perform significant activities of daily living. At the consultative examination in April of 2010, it was noted that the claimant could perform her activities of daily living including feeding, bathing, dressing, and toileting, and able to use public transportation (Exhibit 6F). Although the claimant testified that she was not able to perform most of her household chores as of January of 2011, the medical record is void of evidence that would support such an assertion. Moreover, the claimant['s] assertion of such extreme restriction of activities of daily living, is inconsistent with her testimony at the hearing, in which she stated that she was able to prepare meals for herself and her sister, and take public transportation. The claimant also alleged significant impairments with regards her right upper extremity, but the medical record demonstrates only mild limitations. The claimant testified that she was able to use her right hand to write with a pen with no problems. The consultative examiner also assessed that the claimant's activities of daily living were impaired only minimally due to the claimant's right hand (Exhibit 6F). Moreover, despite the claimant's allegations of disabling physical impairments, the medical record contains sparse evidence of significant treatment. The medical record demonstrates no physical therapy or other rehabilitative therapy.

(R. at 36-37).

The Court finds, and the Commissioner concedes, that the ALJ's credibility determination was based on a series of improper factors. First, the ALJ relies on the fact that the claimant left her last job in 1993 for non-medical reasons. (R. at 36). It is unclear how Plaintiff's leaving the workforce in 1993 to care for her father relates to her credibility on a disability claim filed in 2009. *See, e.g., Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("[Claimant's] physical abilities a year before the alleged onset date therefore tell us little if anything about the credibility of her later

complaints of disabling pain."). This was not a proper factor to consider in determining Plaintiff's credibility.

Second, the ALJ relied on her finding that, "despite the claimant's allegations of disabling physical impairments, the medical record contains sparse evidence of significant treatment." (R. at 36). The ALJ specifically took issue with the fact that Plaintiff received no physical therapy or other rehabilitative therapy. (R. at 36). The ALJ relied on this fact despite the fact the ALJ made no inquiry into why Plaintiff did not receive these treatments. "An ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). Here, the ALJ improperly relied on a lack of treatment to find Plaintiff's allegations incredible. *See Shauger*, 675 F.3d at 696; *Moss*, 555 at 562.

Finally, the ALJ notes that the "claimant's symptoms were noted to be uncontrolled, partially due to the claimant's noncompliance to her prescribed medication." (R. at 37). However, the ALJ relies on a blank page and a note stating that Plaintiff did not take her blood pressure medication on a day she was fasting for a blood test. The Commissioner concedes that the "ALJ should not have relied on those instances of noncompliance when evaluating Bouldin's credibility." (Dkt. 31, Resp. at 8).

In addition to the above noted errors, the ALJ relies on her assessment that Plaintiff retains the ability to perform significant activities of daily living. (R. at 36). While it is permissible for an ALJ to consider a claimant's daily activities when assessing credibility, the Seventh Circuit has repeatedly admonished ALJs not to

place "undue weight" on those activities. *Moss*, 555 F.3d at 562; *see Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). And that is when the extent of the claimant's daily activities is uncontroverted. Here, the ALJ was relying on the April 2010 consultative exam which noted that claimant could perform her activities of daily living. However, Plaintiff testified that she was not able to perform most of her household chores as of January 2011. The ALJ acknowledges this, but states that "the medical record is void of evidence that would support such an assertion." (R. at 36). But lack of objective evidence to fully support allegations is not a legitimate basis for rejecting a claimant's credibility. *See* SSR 96-7p. An ALJ may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("[T]he administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). The ALJ does go on to say that the claimant's assertion of extreme restrictions of activities of daily living starting January 2011 is inconsistent with her testimony at the hearing, specifically when the plaintiff stated that she was able to prepare meals for

herself and her sister and take public transportation. However, in light of the aforementioned discussion, the Court is concerned that the ALJ fails to even mention Plaintiff's treating physician's March 2011 assessment which supports Plaintiff's testimony.

The ALJ also notes that Plaintiff's "medications have caused minimal side effects, all of which are accommodated by the residual functional capacity determination." (R. at 36-37). However, this is no indication how the RFC accounts for Plaintiff's side effects, such as the sleepiness and dizziness that Plaintiff testified her medications cause.

In analyzing the credibility determination as a whole, the ALJ's decision relied on an incorrect assessment of Plaintiff's credibility, including reliance on several improper and irrelevant factors such as when Plaintiff left a previous job in 1993, incorrectly concluding that Plaintiff failed to take her medication, and reliance on activities of daily living. On remand, the ALJ shall reevaluate Plaintiff's complaints with due regard for the full range of medical evidence.[8] *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

## C. Summary

In sum, the ALJ has failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing

---

[8] Plaintiff appeals the ALJ's RFC determination. Because the Court is remanding the case to reevaluate the weight to be given to the treating physician's opinion and the degree of credibility to be awarded Plaintiff's testimony, the RFC will necessarily need to be reconsidered in light of the Court's opinion. Therefore, the Court will not address the parties' RFC arguments.

meaningful judicial review. *See Scott*, 297 F.3d at 595. On remand, the ALJ shall reevaluate the weight to be afforded Dr. Chataut's assessment. The ALJ shall also reassess Plaintiff's credibility with due regard for the full range of medical evidence. The ALJ shall then reevaluate Plaintiff's physical impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings. Finally, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's motion to reverse the decision of the Commissioner [23] is **GRANTED**, and the Commissioner's motion for summary judgment [30] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated: January 20, 2015

*Mary M Rowland*